IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

XEROX FINANCIAL SERVICES, LLC,

    *Plaintiff*,

    v.

JP1 ENTERPRISES, INC. d/b/a
JP ENTERPRISES, also d/b/a SELECT
PRINTING AND COPYING, *et al.*,

    *Defendants*.

Civil No.: 1:23-cv-03493-JRR

## MEMORANDUM OPINION

Plaintiff Xerox Financial Services, LLC filed this action against Defendants JP1 Enterprises, Inc., d/b/a JP Enterprises, and d/b/a Select Printing and Copying ("JP1 Enterprises"); Select Printing, LLC ("Select Printing"); and Frank Friedlieb, individually. (ECF No. 20; the "Amended Complaint.") Pending before the court is "Defendants Select Printing, LLC and Frank Friedlieb's Motion to Dismiss the Amended Complaint and Defendant JP1 Enterprises, Inc.'s Motion to Dismiss the *Quantum Meruit* Claim." (ECF No. 24; the "Motion.")[1] The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted in part and denied in part.

## I.   BACKGROUND[2]

This action arises from a 60-Month Lease Agreement for a Xerox machine between Lessee JP1 Enterprises, identified as "JP Enterprises DBA Select Printing and Copying," and Lessor

---

[1] Also pending is Defendants' Motion to Dismiss at ECF No. 16, which will be denied as moot in view of the later filed Amended Complaint.

[2] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Amended Complaint. (ECF No. 20.) *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Nauticon Office Solutions ("Nauticon"), on November 27, 2018.[3]  (ECF No. 20-4; the "Lease.")

Defendant Friedlieb signed the Lease in his capacity as President of Lessor Nauticon.  *Id.*  The

Lease contained, *inter alia*, an assignment provision that permitted the Lessor to "sell, assign, or

transfer" the Lease, an acceleration provision that permitted the Lessor to "declare the entire

balance of the unpaid Lease Payments for the full term immediately due and payable" upon the

Lessee's default (as defined by the Lease), and a choice of law provision specifying that the Lease

is governed by Maryland law.  (ECF No. 20-4 ¶¶ 8, 15, 21.)  In accordance with the assignment

provision, Nauticon assigned the Lease to Plaintiff in November of 2018.  (ECF No. 20 ¶ 15.)

At some point prior to April of 2021, JP1 Enterprises defaulted on its Lease payment

obligations.  *Id.* ¶ 16.  Although Plaintiff continued to provide the Xerox machine, Plaintiff

accelerated JP1 Enterprises' financial Lease obligations by sending an invoice to JP1 Enterprises

on April 1, 2021, for the full amount due on the Lease.  (ECF No. 20-5.)  To date, Defendants have

not paid the amount Plaintiff asserts is due.  (ECF No. 20 ¶ 21.)

Plaintiff initiated this action on December 22, 2023.  (ECF No. 1.)   At that time, JP1

Enterprises' business license with the District of Columbia had been revoked.[4]  (ECF No. 1 ¶ 2;

ECF No. 20 ¶¶ 2, 13.)  After revocation of its D.C. registration to do business, Defendant Friedlieb

continued to conduct the business, and "utilize the assets," of JP1 Enterprises "as a sole proprietor,"

"under the name Select Printing and Copying" and/or "as Select Printing, LLC."  (ECF No. 20 ¶¶

3, 13.)  Plaintiff alleges, therefore, that Select Printing is liable to Plaintiff as JP1 Enterprises'

"successor in interest."  (ECF No. 20 at pp. 4, 6.)

---

[3] Lessee JP Enterprises DBA Select Printing and Copying is JP1 Enterprises.  (ECF No. 20 ¶¶ 11–12; ECF No. 24-1 at p. 1–2.)

[4] "JP1 Enterprises, Inc. is a Washington, D.C. registered corporation, which has its right to do business revoked on a date uncertain."  (Amended Complaint ¶ 2.)

On February 15, 2024, Plaintiff filed the Amended Complaint, asserting two claims against all Defendants: breach of contract (Count I) and, alternatively, quantum meruit/unjust enrichment (Count II). *Id.* As of the date of Defendants' Motion, February 28, 2024, JP1 Enterprises' license was reinstated effective August 13, 1993.[5] (ECF Nos. 24-2, 24-3.)

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

All Defendants seek dismissal pursuant to Rule 12(b)(6). A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014)

---

[5] Defendants cite an email exhibit to support their contention that JP1 Enterprises' business license was revoked by administrative dissolution on September 6, 2023. Because the court declines to consider the email exhibit, *see* Section II.A *infra*, the court does not take notice of the email.

(quoting *Twombly*, 550 U.S. at 555).  "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief."  *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at \*2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## B.  Consideration of Exhibits

In support of their Rule 12(b)(6) argument, Defendants attach three categories of exhibits for the court's consideration: (1) a Certificate of JP1 Enterprises' Reinstatement (ECF No. 24-2 at p. 1; the "Certificate of Reinstatement"); (2) multiple documents related to JP1 Enterprises' status from the District of Columbia Department of Licensing and Consumer Protection ("DLCP") website (ECF No. 24-2 at p. 2–9; the "DLCP Documents"); and (3) an email from DLCP to Defendant Friedlieb.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court generally does not consider evidence outside of the complaint.  The court may, however, consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity."  *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021).  "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).  "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'"  *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).  Specifically, the court may take judicial notice of publicly available information on state and federal government websites without converting the

motion to one for summary judgment.  *See U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) ("This court and numerous others routinely take judicial notice of information contained on the state and federal government websites.").

Against this backdrop, the court will take judicial notice of the Certificate of Reinstatement, as a matter of public record, and the DLCP Documents, both as a matter of public record and as information publicly available on a state website.  *Garcia*, 855 F.3d at 621, *supra*.  The email from DLCP is neither "integral to" nor "relied upon in the complaint," and it does not fall under another category of document/information of which the court may take note on a 12(b)(6) motion.  The court will therefore not consider the email message in ruling on the Motion.  *Fairfax*, 2 F.4th at 292; *Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d. at 611, *supra*.

## III.   ANALYSIS

### A.  Dismissal of Defendant Friedlieb

Defendants' Motion seeks dismissal of all claims against Defendant Friedlieb.  (ECF No. 24 at p. 6–10.)  In response, Plaintiff "concedes to" his dismissal from the action.  (ECF No. 25 ¶ 5.)  Accordingly, the Motion will be granted as to claims against Defendant Friedlieb.[6]

### B.  Dismissal of Defendant Select Printing

In view of JP1 Enterprises' reinstatement, Defendants also seek dismissal of this action against Select Printing, asserting there is no longer a basis to assert successor liability of Select Printing.  (ECF No. 24-1 at p. 7–10.)  Plaintiff avers that dismissal on the issue of successor liability would be premature at this stage, as Plaintiff has alleged sufficient facts to state the basis for Select Printing's successor liability under a mere continuation theory.  (ECF No. 25 at p. 4–5.)

---

[6] Defendants seek dismissal of Defendant Friedlieb with prejudice.  The court declines to dismiss any counts with prejudice at this time.  *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (stating that "the nature of dismissal" is left to "the sound discretion of the district court").

Regarding reinstatement, D.C. law provides:

> When reinstatement under this section is effective, it shall relate back to, and be effective, as of the effective date of the administrative dissolution, and the domestic filing entity shall resume carrying on its activities and affairs as if the administrative dissolution had never occurred, except for the rights of a person arising out of an act or omission in reliance on the dissolution before the person knew or had reason to know of the reinstatement.

D.C. CODE ANN. § 29-106.03(d).

Similarly, the Maryland law provides:

> The reinstatement and extension of a corporation's existence under § 3-501 of this subtitle or the revival of a corporation's charter under § 3-507 of this subtitle has the following effects:
>
> (1) If otherwise done within the scope of its charter, all contracts or other acts done in the name of the corporation while the charter was void are validated, and the corporation is liable for them; and
> (2) All the assets and rights of the corporation, except those sold or those of which it was otherwise divested while the charter was void, are restored to the corporation to the same extent that they were held by the corporation before the expiration or forfeiture of the charter.

MD. CODE ANN., CORPS. & ASS'NS § 3-512. [7] "The revival of a corporate charter, therefore, brings the corporation back to life, and restores its rights as if they had never been lost." *Tri-Cnty. Unlimited, Inc. v. Kids First Swim Sch. Inc.*, 191 Md. App. 613, 621 (2010). According to Defendants, JP1 Enterprises was restored to its pre-dissolution position upon reinstatement, and, thus, Plaintiff has no successor liability recourse against Select Printing. *Id.* at p. 6–8.

Under traditional concepts of successor liability, a corporation that acquires assets of another corporation is generally not liable for the predecessor's debts. *Martin v. TWP Enterprises Inc.*, 227 Md. App. 33, 49 (2016) (quoting *Baltimore Luggage Co. v. Holtzman,* 80 Md. App. 282, 290 (1989)). In Maryland, however, "the predecessor corporation's debts and liabilities become

---

[7] The court recites both D.C. and Maryland law inasmuch as JP1 Enterprises is a D.C. business entity and the Lease is governed by Maryland law.

the obligation of the successor corporation when: (1) there is an expressed or implied assumption

of liability; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation

is a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently

to escape liability for debts." *Id.* at 49–50 (citing *Baltimore Luggage,* 80 Md. App. at 290).  "Cases

considering successor liability claims under a motion to dismiss standard have generally required

(1) the plaintiff to identify which of the four exceptions it is invoking for successor liability and

(2) facts supporting the invocation of the chosen exception." *68th Street Site Work Group v.

Airgas, Inc.*, No. SAG-20-3385, 2021 WL 4255030, at *9 (D. Md. Sept. 16, 2021).

Maryland common law "directs that the 'mere continuation' exception applies to hold

liable 'the purchasing corporation [that] maintains the same or similar management and ownership

but wears a new hat.'" *Martin*, 227 Md. App. at 52 (quoting *Baltimore Luggage, supra,* 80 Md.

App. at 297) (cleaned up).  It "permits recovery against the successor corporation where the

successor is essentially the same corporate entity as the predecessor corporation." *Id.*  The

exception "is designed to prevent a situation whereby the specific purpose of acquiring assets is to

place those assets out of reach of the predecessor's creditors." *Odjaghian v. EngagePoint, Inc.*,

No. CV JKB-18-0151, 2018 WL 3329617, at *5 (D. Md. July 6, 2018), *aff'd sub nom. Odjaghian

v. HHS Tech. Grp., LLC*, 848 F. App'x 534 (4th Cir. 2021).

Courts consider a number of factors when assessing application of successor liability under

a "mere continuation" theory: "(1) any change in ownership and management, (2) the continued

existence of the selling corporation, (3) the adequacy of consideration, (4) the transfer of any

instrumental employees from the predecessor to the successor, and (5) the purpose of the asset

sale." *Martin v. TWP Enterprises Inc.*, 227 Md. App. at 60; *see Yao v. Chen*, No. CV TDC-23-

0889, 2024 WL 1051740, at *5 (D. Md. Mar. 11, 2024) (same).  "The two primary indicia

supporting successor liability are: (1) 'common officers, directors, and stockholders,' and (2) 'only one corporation in existence after the completion of the sale of assets.'" *Odjaghian*, 2018 WL 3329617, at *5 (quoting *Baltimore Luggage Co.*, 80 Md. App. at 297).

Here, Plaintiff's assertion of this action against Select Printing seemingly relies upon a "mere continuation" theory of successor liability—that (then) defunct JP1 Enterprises continued to do business as Select Printing. (ECF No. 20 ¶ 13.) In asserting this theory, Plaintiff includes facts suggesting or supporting a finding of common ownership, common use of the trade name referenced in the Lease, and overlap between Select Printing's formation and JP1 Enterprises' business license revocation. (ECF No. 20 ¶¶ 2,4–5, 13; ECF No. 20-1, 20-3, 24-2.) While such facts may be pertinent to a "mere continuation" theory, the facts fail to address Defendants' argument—that Select Printing is not subject to successor liability following reinstatement of JP1 Enterprises' registration status. The sole basis Plaintiff advances in its Amended Complaint for imposition of successor liability is that Select Printing continued JP1 Enterprises' business after revocation of its business license. As set forth above, JP1 Enterprises' business license has since been reinstated to its pre-revocation status. *See* D.C. CODE ANN. § 29-106.03 and MD. CODE ANN., CORPS. & ASS'NS § 3-512, *supra*. Therefore, the basis upon which Plaintiff asserts successor liability has been rendered moot, or rather cured.

Further, the Amended Complaint alleges no facts to support, as Plaintiff speculates in its response, that "the bulk of the business could potentially have been divided or transferred from the predecessor corporation."[8]    (ECF No. 25 at p. 5.) Accordingly, even accepting Plaintiff's

---

[8] Moreover, Plaintiff's suggestion that JP1 Enterprises' business "could potentially have been divided or transferred" does not appear in its pleading, but rather was raised in opposition to the Motion. *See McDonald v. LG Elecs. USA, Inc.*, 219 F. Supp. 3d 533, 541 (D. Md. 2016) ("[I]it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." A plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint." (citations omitted) (cleaned up)).

allegations as true, no basis exists on which to assert successor liability against Select Printing. The Motion will therefore be granted as to Select Printing.

### C. Count II: Quantum Meruit/Unjust Enrichment Claim

Defendants further seek dismissal of Plaintiff's quantum meruit/unjust enrichment claim based on the existence of an expressed contract.  (ECF No. 24-1 at p. 11.)  "[U]njust enrichment and quantum meruit, both 'quasi-contract' causes of action, are remedies to provide relief for a plaintiff when an enforceable contract does not exist but fairness dictates that the plaintiff receive compensation for services provided."  *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96–97 (2000) (quoting *Dunnaville v. McCormick & Co.*, 21 F.Supp.2d 527, 535 (1998)); *see AXE Properties & Mgmt., LLC v. Merriman*, 261 Md. App. 1, 33 (2024) (same).  A quasi-contract claim relates to "an obligation which the law creates in absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it."  *Chassels v. Krepps*, 235 Md. App. 1, 17–18 (2017) (quoting *J. Roland Dashiell & Sons, Inc.*, 358 Md. at 94–95 (2000)).

"It is settled law in Maryland . . . that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties."  *J. Roland Dashiell & Sons, Inc.*, 358 Md. at 96 (*FLF, Inc. v. World Publications, Inc.,* 999 F.Supp. 640, 642 (D. Md. 1998).  Of course, however, a plaintiff "is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute."  *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 608 (D. Md. 2015) (citation omitted).  Indeed, "at least at the pleadings stage, Plaintiffs may plead a claim for unjust enrichment in the alternative, in the event that the alleged contracts are unenforceable."  *Franzoy*

*v. Yockey*, 695 F. Supp. 3d 696, 700 (D. Md. 2023); *see* FED. R. CIV. P. 8(d)(2) ("A party may set out [two] or more statements of a claim [] alternatively . . . .").

In sum, Plaintiff is permitted to assert an alternative quasi-contract claim under Maryland law, and the court declines to dismiss it at this early stage of litigation.  Defendants' Motion will therefore be denied as to Count II.

## IV.    <u>CONCLUSION</u>

Accordingly, for the reasons set forth herein, by separate order, the Motion will be granted in part and denied as part as follows: granted to the extent it seeks dismissal of Defendants Select Printing and Friedlieb, and denied in all other respects.


September 2, 2024                                    /s/_____
                                                    Julie R. Rubin
                                                    United States District Judge