IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| XEROX FINANCIAL SERVICES, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No. DRM-23-3493 |
| | * | |
| JP1 ENTERPRISES, INC. d/b/a | * | |
| JP ENTERPRISES, also d/b/a SELECT | * | |
| PRINTING AND COPYING, *et al.*, | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Xerox Financial Services, LLC's Motion for Leave to File Second Amended Complaint. ECF No. 74. For reasons explained herein, the Court GRANTS this Motion. The Court further directs the parties to submit a joint status report relating to any amendments or supplements to the parties' cross-motions for summary judgment which the parties may contemplate filing as a result of this amendment.

**Factual and Procedural Background**

On December 22, 2023, the original Plaintiff Xerox Corporation ("Xerox") initiated this action for breach of contract to recover unpaid lease payments arising from a November 27, 2018 agreement for the rental of commercial printing equipment. ECF No. 1 at 3. Under the terms of the lease Defendant JP1 Enterprises, Inc. ("JP1") agreed to pay lessor Nauticon Office Solutions ("Nauticon") a monthly base of $7,895, plus applicable taxes, for a period of sixty months. *Id.* at 4. The lease further provided that upon default, Nauticon could accelerate the balance of payments due and recover attorneys' fees and interest at a rate of eighteen percent per annum. *Id.*

Nauticon quickly assigned its interest in the lease to Xerox subsidiary Xerox Financial Services, LLC ("XFS"). XFS substituted itself as Plaintiff and filed the Amended Complaint on

February 15, 2024. ECF No. 20 at 1. In the Amended Complaint, XFS alleged that after JP1's corporate charter was revoked, Defendant Frank Friedlieb ("Friedlieb") continued operating the same printing business under the names "Select Printing and Copying" and "Select Printing, LLC," a Maryland entity he also owned, while also using the leased equipment without making payments. ECF No. 20 3–5. An April 1, 2021 invoice reflected forty-six months remaining on the lease term and an overdue balance of $79,186.85. ECF No. 20-5 at 1–2. XFS claimed that Defendants defaulted on the lease despite continued use of the equipment and sought $436,330 in unpaid principal, and $170,168.70 in interest, attorneys' fees, and costs. ECF No. 20 at 5–6. In the alternative, XFS plead unjust enrichment. *Id.*

Defendants filed a Motion to Dismiss on February 28, 2025, which was granted in part, denied in part on September 2, 2024. ECF Nos. 24, 28. Specifically, both claims were dismissed without prejudice against Defendants Friedlieb and Select Printing LLC ("Select Printing")[1], but remained active against Defendant JP1. Plaintiff's Motion for Reconsideration was denied on July 8, 2025. ECF Nos. 62, 70.

XFS now moves for leave to file a Second Amended Complaint to add a claim for fraudulent conveyance under the Maryland Uniform Fraudulent Conveyance Act, Md. Code Ann. Com. Law § 15-201, et seq. ("MUFCA"), against JP1 and Select Printing, thus reviving Select Printing as a defendant. ECF No. 74 at 1.[2] XFS asserts that discovery has revealed JP1, through its principal Frank Friedlieb, transferred assets, including equipment, trade names, and goodwill, to Select Printing for little or no consideration with intent to hinder creditors. *Id.* at 2. XFS argues the

---

[1] Select Printing was named as a defendant "as successor in interest" in both the Complaint and Amended Complaint.
[2] The Proposed Second Amended Complaint also contains some minor modifications to Counts 1 and 2, which JP1 does not specifically challenge in its Opposition.

amendment is timely, supported by newly discovered evidence, and consistent with Rule 15(a)'s liberal standard. *Id.*

Select Printing opposes, noting that the motion comes after three extensions of discovery and seventeen months of litigation. Select Printing also argues that Plaintiff has not pled fraud with particularity, as Select Printing contends is required by Rule 9(b). ECF No. 83 at 1, 5. It emphasizes that the copier subject to the lease was repossessed and sold by Plaintiff in 2021, and that other equipment sold to Select Printing in 2022 was appraised and purchased for value. *Id.* at 5. According to Select Printing, Plaintiff's motion reflects delay and bad faith rather than newly uncovered evidence. *See generally* ECF No. 83.

In its Reply, XFS argues that Defendants' opposition mischaracterizes the pleading standard by incorrectly applying Rule 9(b) to statutory fraudulent conveyance claims, which XFS contends are governed by the more flexible Rule 8 standard. ECF No. 84 at 4. XFS asserts that it has adequately alleged fraudulent transfers under the Maryland Uniform Fraudulent Conveyance Act, including that JP1 transferred assets such as equipment, contracts, employees, and goodwill to Select Printing, LLC without fair consideration and while insolvent. *Id.* at 5. Citing deposition testimony and documentary evidence, XFS also argues that these transfers were intended to hinder creditors and that Defendants' factual disputes are premature at the pleading stage. *Id.* at 6. Accordingly, XFS believes the amendment should be permitted. *Id.* at 7.

## Legal Standard

Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires. *Terran Biosciences, Inc. v. Compass Pathfinder Ltd.*, No. ELH-22-1956, 2025 WL 1928014, at *8 (D. Md. July 11, 2025). It is "the Fourth Circuit's policy to liberally allow

3

amendment in keeping with the spirit of Federal Rule of Civil Procedure 15(a)." *See Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010).

A district court "may deny leave to amend when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile. Leave to amend should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Surguy v. Lentz*, No. JKB-24-0122, 2024 WL 4988879, at *1 (D. Md. Dec. 5, 2024) (citing *Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 879–80 (4th Cir. 2020)).

First, prejudice is "[p]erhaps the most important factor" to consider in ruling on a motion for leave to amend a complaint. *Class Produce Group, LLC v. Harleysville Worcester Ins. Co.*, No. SAG-16-3431, 2018 WL 5785664, at *3 (D. Md. Nov. 5, 2018) (quoting 6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil § 1487 (3d. ed. 2010)). "'An amendment can cause undue prejudice when it raises a new legal theory that would require the gathering and analysis of facts not already considered by the opposing party [and] ... the amendment is offered shortly before or during trial.'" *Edmondson v. Eagle Nat'l Bank*, No. SAG-16-3938, 2019 WL 6684130, at *2 (D. Md. Dec. 6, 2019) (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)). Additionally, this court has repeatedly held that "'the time, effort, and money ... expended in litigating [a] case' do not constitute 'substantial prejudice' weighing against leave to amend." *Best v. Newrez LLC*, No. GJH-19-2331, 2020 WL 5513433, at *8 (D. Md. Sept. 11, 2020) (quoting *Class Produce Group, LLC*, 2018 WL 5785664, at *9 (citation omitted)).

Second, as the Fourth Circuit has noted, it is difficult to provide a "comprehensive definition of a term like bad faith; in truth, it is a difficult term to define without retreating to

circular reasoning or just listing examples." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 198 (4th Cir. 2022). In *MedCom Carolinas*, the Fourth Circuit cites the Black's Law Dictionary definition of "bad faith" which is "[to act with] dishonesty of belief or purpose." *See Bad Faith, Black's Law Dictionary* (8th ed. 2004). The Fourth Circuit goes onto to explain "[t]o act with a dishonesty of purpose is to act for the wrong reasons. It may be outright lying, deceiving, playing unjustifiable hardball, slacking off, intentionally causing confusion, or stubbornly refusing to follow rules—you can imagine cases where a party just wants to cause chaos—or it might be something as mundane as noticing someone's mistake and saying nothing about it." *See* Restatement (Third) of Restitution and Unjust Enrichment § 52 cmt. c & illus. 3 (Am. Law Inst. 2011).

Third, "[a] motion for leave to amend should be denied as futile where the proposed amendments cannot survive a motion to dismiss." *Sol v. M&T Bank*, 713 F. Supp. 3d 89, 99 (D. Md. 2024) (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)). Ordinarily, to withstand a motion to dismiss, the proposed amended complaint need only satisfy the "simplified pleading standard" of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002). However, in cases where the complaint alleges fraud, Rule 9(b) imposes a heightened requirement: the circumstances constituting fraud must be pled "with particularity." Fed. R. Civ. P. 9(b). The plaintiff must, at a minimum, describe the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Failure to satisfy Rule 9(b)'s particularity requirement renders a proposed amendment futile because the amended

complaint would not survive a motion to dismiss. Additionally, Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive. *Id.*

**Analysis**

A. Prejudice

Defendants have made no colorable claims of prejudice they would suffer[3] and there is no indication that granting leave to amend would, in fact, cause prejudice against the Defendants. This case remains in its early stages and there is no trial date. Although Plaintiffs seek to add a cause of action, fraudulent conveyance, that requested addition alone does not establish prejudice, and any additional discovery required also does not amount to substantial prejudice under controlling precedent. As the Fourth Circuit has explained, "although prejudice can result where a new legal theory is alleged if it would entail additional discovery and evidentiary burdens on the part of the opposing party, this 'basis for a finding of prejudice essentially applies where the amendment is offered shortly before or during trial.'" *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 118–19 (4th Cir. 2013) (quoting *Johnson*, 785 F.2d at 510). Because—as in *Scott*—the instant case is not close to trial, and no undue burdens have been shown, the Court concludes that Defendants would suffer no prejudice from the filing of a Second Amended Complaint.

B. Bad Faith

There has been no showing that any delay on Plaintiff's part filing this Motion was the result of bad faith. There is also no evidence that Plaintiff acted in bad faith in seeking leave to file its Second Amended Complaint. The request to amend follows discovery developments, including deposition testimony and document production, yielding information regarding allegedly

---

[3] Although Defendants reference the parties' discovery disputes, some of which necessitated court intervention, and changes to the scheduling order, they do not connect those issues to any claim of prejudice arising from amendment. Instead, Defendants' opposition focuses on whether Plaintiff has pled fraud with sufficient particularity, and secondarily whether Plaintiff has acted with sufficient diligence.

fraudulent transfers that was not apparent at the time the initial complaint was filed. *See* ECF No. 84 at 6. Plaintiff promptly moved to amend after obtaining this information and shortly after the denial of Plaintiff's Motion for Reconsideration. *See* ECF No. 71. Defendants identify no improper motive, such as an attempt to harass, cause undue delay, or avoid an imminent dispositive motion, that would warrant denial due to bad faith. Therefore, the Court finds the motion to amend was filed in good faith and not based on a dishonesty of belief or purpose.

C. Futility

Defendants argue that the Court should deny Plaintiff's Motion for Leave to File Second Amended Complaint because the proposed pleading fails to satisfy Rule 9(b)'s heightened particularity requirement. ECF No. 83 at 5. Plaintiff responds that "[n]o special or unique pleading requirements exist for fraudulent conveyance." ECF No. 84 at 4. Plaintiff further cites *Milligan v. May*, 2024 WL 4336564, at *8–10 (D. Md. Sept. 26, 2024), and *Santander Bank*, for the proposition that courts in this District apply Rule 9(b) to actual fraudulent transfer claims but only Rule 8(a) to constructive fraudulent transfer claims.

The Court needs not resolve the actual / constructive distinction advanced by Plaintiff because the proposed Second Amended Complaint repeatedly alleges that Defendants acted "with actual intent to hinder, delay, or defraud creditors." ECF No. 74-3 at 6. Having framed its claim in terms of actual fraudulent transfer, Plaintiff must satisfy Rule 9(b), and the Court therefore evaluates futility under that heightened standard.[4]

---

[4] The Court is not convinced that precedent is as clear-cut as Plaintiff suggests. *Milligan* expressly declined to weigh in on the issue and adopt a categorical rule for all fraudulent conveyance allegations, instead opting to resolve the issue by stating that "the Court [was] satisfied that the complaint [met] the heightened pleading standard." *Milligan*, 2024 WL 4336564, at *11. Similarly, *Santander Bank* recited Rule 9(b)'s particularity requirement before discussing the elements of a fraudulent conveyance claim under MUFCA, signaling that courts may apply Rule 9(b) even where the distinction between actual and constructive fraud is not squarely addressed.

Plaintiff has alleged sufficient facts to meet Rule 9(b)'s particularity requirement. "A plaintiff sufficiently pleads a fraudulent conveyance claim under the MUFCA by describing the transactions which allegedly constitute a fraudulent conveyance, identifying the participants in those transactions, and generally alleging that the transfers were made without fair consideration." *Santander Bank, NA v. Gaver*, No. RDB-17-00374, 2019 WL 1077386, at *5 (D. Md. Mar. 7, 2019) (citing *Nat'l Mortg. Warehouse v. Trikeriotis*, 201 F. Supp. 2d 499, 505 (D. Md. 2002) (finding that plaintiff-creditor had sufficiently pled a fraudulent conveyance claim against the wife of the debtor's agent because it described the allegedly fraudulent transactions, identified the participants to the transactions, alleged that the transfers were without fair consideration, and indicated that the debtor was rendered unable to pay what it owed to its creditor)). *See also Fenzel v. Group2 Software, LLC*, DKC-13-0379, 2014 WL 2882956, at *2-3 (D. Md. June 24, 2014) (finding that plaintiff-creditor satisfied the requirements of Rule 9(b) by identifying the participants, alleging that the transfers were without fair consideration, and indicating that the transfers were made to hinder, delay, or defraud the plaintiff by making his ownership interest in the defendant-debtor worthless and rendering the debtor unable to pay its debts to the plaintiff-creditor).

The proposed Second Amended Complaint identifies the specific transfers alleged to constitute fraudulent conveyances. It identifies who engaged in the transfers: JP1 Enterprises, Inc., acting through its principal Frank Friedlieb, and Select Printing, LLC, the affiliated company under the same ownership. ECF No. 74-3 at 6–7. It also identifies what was transferred: "valuable business assets—including equipment, trade names, customer contracts, employees, and business goodwill." *Id.* It pleads how and when the transfers occurred: after JP1 became insolvent and after its right to do business was revoked, it "conducted all business and operations through Select Printing, LLC." ECF No. 74-3 at 6. It alleges that the equipment transfers were made for little or

no consideration. *Id.* at 7. It also alleges that the transfers were made "with actual intent to hinder, delay, or defraud creditors, including Plaintiff" and that Select Printing "participated in and received the benefit" of those assets. *Id.* 5–6. Viewed in light of the precedents in this district, Plaintiff's detailed allegations of the transfers' participants, timing, assets, consideration, and intent are sufficient to satisfy Rule 9(b). Therefore, the Plaintiff's Motion for Leave to File Second Amended Complaint will be granted.

## Conclusion & Order

For the foregoing reasons, it is ORDERED that:

1. Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 74) is GRANTED.

2. The Clerk shall docket the Proposed Second Amended Complaint (ECF No. 74-2) as the Second Amended Complaint.

    The parties are directed to file on or before October 3, 2025 a joint status report indicating (1) whether either movant intends to amend or supplement its pending Motion for Summary Judgment as to Counts 1 and 2 of the Amended Complaint, in light of the modifications to those counts in the Second Amended Complaint—and if so, a jointly-proposed briefing schedule for those motions; (2) whether any party intends to file a dispositive motion with regard to Count 3 of the Second Amended Complaint, and, if so, a jointly-proposed deadline for such motions.

Date:   September 19, 2025                             /s/
                                                Douglas R. Miller
                                                United States Magistrate Judge