IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| XEROX FINANCIAL SERVICES, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No. DRM-23-3493 |
| | * | |
| JP1 ENTERPRISES, INC. d/b/a | * | |
| JP ENTERPRISES, also d/b/a SELECT | * | |
| PRINTING AND COPYING, *et al.*, | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 85 & 86, and Defendants' Motion to Dismiss Second Amended Complaint or Alternatively Motion for Summary Judgment, ECF No. 94. For the reasons explained herein, the Court will grant Plaintiff's motion for summary judgment as to liability on Count One (breach of contract), but will deny it as to the amount of damages. The Court will deny Defendant's motion for summary judgment. The Court will treat ECF No. 94 as a Motion for Summary Judgment on Count Three (fraudulent conveyance), and will deny it. The Court will also dismiss Count Two (quantum meruit / unjust enrichment), in light of Plaintiff's agreement thereto.

## I.     Factual and Procedural Background

On December 22, 2023, the original Plaintiff, Xerox Corporation ("Xerox"), initiated this action for breach of contract to recover unpaid lease payments arising from a November 27, 2018 agreement for the rental of commercial printing equipment ("the lease"). ECF No. 1 at 3. Under the terms of the lease, Defendant JP1 Enterprises, Inc. ("JP1") agreed to pay lessor Nauticon Office Solutions ("Nauticon") a monthly base of $7,895, plus applicable taxes, for a period of sixty months. *Id.* at 4. The lease further provided that upon default, Nauticon could accelerate the

balance of payments due and recover attorneys' fees and interest at a rate of eighteen percent per annum. *Id.* Nauticon assigned its interest in the lease to Xerox subsidiary Xerox Financial Services, LLC ("XFS").

XFS substituted itself as Plaintiff and filed the Amended Complaint on February 15, 2024. ECF No. 20 at 1. In the Amended Complaint, XFS alleged that after JP1's corporate charter was revoked, Defendant Frank Friedlieb ("Friedlieb") continued operating what amounted to the same printing business under the names "Select Printing and Copying" and "Select Printing, LLC" (the latter being the name of a Maryland entity he also owned), while also using the leased equipment without making payments. ECF No. 20 at 3–5. An April 1, 2021 invoice reflected forty-six months remaining on the lease term and an overdue balance of $79,186.85. ECF No. 20-5 at 1–2. XFS claimed that Defendants defaulted on the lease despite continued use of the equipment and sought $436,330 in unpaid lease balance, as well as $170,168.70 in interest, attorneys' fees, and costs. ECF No. 20 at 5–6.  In the alternative to this breach of contract theory (Count One), XFS plead quantum meruit / unjust enrichment (Count Two). *Id.*

Defendants filed a Motion to Dismiss on February 28, 2024, which the Court granted in part and denied in part on September 2, 2024. ECF Nos. 24, 28. Specifically, both claims were dismissed without prejudice against Defendants Friedlieb and Select Printing LLC ("Select Printing")[1], but remained active against Defendant JP1. Plaintiff's Motion for Reconsideration was denied on July 8, 2025. ECF Nos. 62, 70.

On July 24, 2025, XFS moved for leave to file a Second Amended Complaint to add a claim (Count Three) for fraudulent conveyance under the Maryland Uniform Fraudulent

---

[1] Select Printing was named as a defendant "as successor in interest" in both the Complaint and Amended Complaint.

Conveyance Act, Md. Code Ann., Com. Law § 15-201, et seq. ("MUFCA"), against JP1 and Select Printing, thus reviving Select Printing as a defendant. ECF No. 74 at 1. The Court granted the motion for leave to file, over Defendant's objection, on September 22, 2025. ECF No. 87.

This new count asserted that JP1 transferred assets, including equipment, trade names, and goodwill, to Select Printing for little or no consideration with intent to hinder, delay, or defraud creditors, at a time when JP1 was insolvent or rendered insolvent by the transfer, in bad faith. ECF No. 88 at 5-6.

XFS now moves for summary judgment on Count One (breach of contract). ECF No. 85. JP1 moves for summary judgment on Counts One and Two. ECF No. 86. In its response, XFS agrees that Count Two, its alternative claim for quantum meruit / unjust enrichment, can be dismissed. ECF No. 89; ECF No. 89-1.[2] Select Printing and JP1 bring a Joint Motion to Dismiss the Second Amended Complaint, or Alternatively Motion for Summary Judgment, ECF No. 94, seeking dismissal or summary judgment on Count Three, XFS's claim for fraudulent conveyance.

## II.    Legal Standard

### A.  Cross-Motions for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*,

---

[2] Although the parties filed their cross-motions for summary judgment before the Court granted the motion for leave to file the Second Amended Complaint, Counts One and Two of the Second Amended Complaint bear only minor clarifications to their counterparts in the First Amended Complaint, and the differences are immaterial for purposes of the instant motions. The parties were offered an opportunity to supplement their summary judgment briefing as to these counts and declined to do so. *See* ECF No. 87 at 9. Accordingly, the Court treats the pending cross-motions as applying to the Second Amended Complaint.

477 U.S. 242 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a court's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

When both parties file motions for summary judgment, as here, a court applies the same standards of review. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n. 3 (4th Cir. 1983). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 325 (10th Cir. 1967); *see also McKenzie v. Sawyer*, 684 F.2d 62, 68, n.3 (D.C. Cir. 1982) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non-existence of a factual dispute." *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983).

### B. Motion to Dismiss Second Amended Complaint

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo,* No. RDB–12–237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency

of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal,* 556 U.S. at 678–79. *See Velencia,* 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank,* No. CCB–12–1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also CACI Int'l v. St. Paul Fire & Marine Ins. Co.,* 566 F.3d 150, 154 (4th Cir. 2009). However, if the Court considers matters outside the pleadings the Court must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.,* No. RDB–12–318, 2013 WL 139194, at *2 (D. Md. Jan. 10, 2013).

In this circumstance, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). "'[R]easonable opportunity' means that all parties must be given 'some indication by the court ... that it is treating

the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits and pursue reasonable discovery.'" *Fare Deals Ltd. v. World Choice Travel.Com, Inc.,* 180 F.Supp.2d 678, 692 (D. Md. 2001) (*quoting Gay v. Wall,* 761 F.2d 175, 177 (4th Cir.1985) (internal citations omitted)). Where a party knows, however, that materials outside the pleadings are before the court, that party is considered to have notice that the motion to dismiss may be treated as a motion for summary judgment. *Fare Deals Ltd.,* 180 F.Supp.2d at 693. In addition to the notice requirement, the court must also conclude that the nonmoving party has had sufficient opportunity to discover information essential to its opposition. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5 (1986) (*citing* Fed. R. Civ. P. 56(f)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## III.    Discussion

### A.  Cross-Motions for Summary Judgment

XFS moves for summary judgment on its breach of contract claim, asserting that JP1 undisputedly defaulted under a finance lease governed by Uniform Commercial Code (UCC) Article 2A, Md. Code Ann., Com. Law § 2a-101 *et seq.*, and that defenses related to equipment condition were barred by the "as-is" lease terms. ECF No. 85-1 at 2. Specifically, XFS argues that the lease authorized acceleration of all remaining payments, repossession, resale "with or without notice," and recovery of any deficiency. XFS states that JP1 voluntarily surrendered the copier following default and that, after crediting the $13,500 received through a resale, JP1 owed $412,830 plus eighteen percent contractual interest and attorneys' fees. ECF No. 85-1 at 5. XFS argues that JP1 has no contractual defense because the lease disclaims all warranties[3] and requires

---

[3] The lease transferred manufacturer warranties, if any, to the lessee. ECF No. 89-2 at 2, ¶ 5.

6

payment regardless of equipment-related disputes, and that Maryland law permits freedom to contract, including waivers or modifications of UCC provisions. ECF No. 85-1.

JP1 also moves for summary judgment, arguing that that because it took possession of the copier, the transaction—and therefore XFS's post-default remedies—are governed by Article 9 of the UCC, Md. Code Ann., Com. Law § 9-101 *et seq*, rather than Article 2A. ECF No. 86-1 at 5. JP1 argues that XFS is barred from recovering any deficiency because, after repossessing the copier in April 2021, XFS resold the collateral without providing notice or proving a commercially reasonable sale as required by Maryland's adoption of UCC Article 9. ECF No. 86-5 at 4. XFS responds that Article 9 theory is inapplicable because the contract is expressly a finance lease under Article 2A. XFS asserts that Article 2A governed lessee default and that § 2A-502 expressly provides that a lessee in default is not entitled to notice unless the lease requires it. XFS emphasizes that the lease permitted resale "with or without notice" and that Maryland law allows parties to vary from UCC provisions under § 1-302. XFS argues that Article 9 did not apply and that its disposition of the copier complied with the parties' contractual terms. XFS also agrees that its alternative claim for quantum meruit / unjust enrichment can be dismissed. ECF No. 89; ECF No. 89-1.

### 1.  Whether the Agreement Was Governed by Article 2A or Article 9

The Court must in the first instance determine whether the November 27, 2018 equipment lease between XFS and JP1 was governed by UCC Article 2A, which regulates finance lease of goods, or Article 9, which governs secured transactions.

"Whether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case." Md. Code Ann., Com. Law § 1–203(a); *In re Lasting Impressions Landscape Contractors, Inc.*, 579 B.R. 43, 51 (Bankr. D. Md. 2017). Under Md. Code Ann., Com. Law § 1–203, which codifies U.C.C. § 1–203, for a court to find that an ostensible

7

lease creates a security agreement, it must apply a two-part test. First, the Court must determine whether the lessee's obligation to make payments is not subject to termination by the lessee. Second, if that condition is satisfied, the Court must determine whether any *one* of the four conditions in § 1–203(b) is present: the lease term equals or exceeds the remaining economic life of the goods; the lessee is bound to renew the lease or is bound to become the owner; the lessee may renew the lease for no or nominal consideration; or the lessee may become owner of the goods for no or nominal consideration. If either prong of the test is not met, the transaction is a true lease, even if it imposes substantial financial obligations on the lessee.

Here, JP1 identifies no § 1-203(b) condition suggesting that the lease created a security interest. ECF No. 86. Indeed, the undisputed facts in the record confirm that none of the statutory bright-line conditions are present. The agreement also expressly identifies the transaction as a finance lease: Section 20 provides that the lease was a "finance lease" under Article 2A. ECF No. 89-2 at 2.

First, nothing in the record indicates that the original sixty-month lease term was equal to or exceeded the copier's remaining economic life. JP1 offers no evidence regarding the copier's expected usable lifespan. Second, JP1 was not bound to renew the lease for the remainder of the copier's economic life or to become the owner at the expiration of the term. Third, JP1 did not possess an option to renew the lease for nominal or no additional consideration; nor did it point to any provision in the agreement suggesting that a renewal rent would be below the market rate. Indeed, the lease provided that if the equipment were not returned, automatic renewal would be at the same monthly rate as the original lease terms. ECF No. 89-2 at 2 ¶ 9. Fourth, the agreement did not grant JP1 an option to become the owner of the copier for nominal consideration. *Id.* To the contrary, the purchase option under the lease was for full market value, and the lease expressly

stated that the equipment remained the property of the lessor. ECF No. 89-2 at 2. These facts are consistent with a true finance lease, not a disguised security agreement.

JP1 relies exclusively on Md. Code Com. Law § 9-110, contending that Article 9 automatically applied once the goods were delivered to the lessee. ECF No. 86-1 at 5. But § 9-110 extends Article 9 only to security interests arising under § 2-401, § 2-505, § 2-711(3), or § 2A-508(5). Those sections address situations in which a buyer or lessee acquires a security interest due to a seller's or lessor's default or because of rejection, revocation, or conditional delivery of goods. JP1 does not allege any seller or lessor default, rejection of the copier, revocation of acceptance, or any circumstance that could give rise to a statutory security interest under those provisions. Absent a security interest, the agreement remained a true finance lease governed by Article 2A. Accordingly, Article 9's notice or disposition requirements do not apply.[4]

The Court considers also whether XFS was required to provide JP1 with notice before disposing of the copier. Under Article 2A, a lessee in default "is not entitled to notice of default or notice of enforcement" unless the lease states otherwise. Md. Code Com. Law § 2A-502. Here, the agreement expressly authorized XFS to "sell, re-rent or otherwise dispose of the [copier], with or without notice to [JP1]." ECF No. 89-2 at 1-2. It is undisputed that XFS disposed of the copier in July 2021 without providing notice to JP1. But because the agreement expressly permitted disposition without notice, ECF No. 89-2 at 2, and because Article 2A does not impose a notice requirement, XFS's failure to provide notice does not eliminate its right to a deficiency payment.

Finally, the Court further concludes that no genuine dispute of material fact exists as to JP1's liability under the lease. Under Maryland law, a breach of contract claim requires proof of a

---

[4] Because the Court concludes at the threshold that the transaction is governed by Article 2A rather than Article 9, it need not reach Defendant's argument that no creditor–debtor relationship existed between the parties for purposes of Article 9. *See* ECF No. 86-1, at 5–7.

contractual obligation, breach, and resulting damages. *See, e.g.*, *Taylor v. NationsBank, N.A.,* 365 Md. 166, 175, 776 A.2d 645, 651 (2001). Here, JP1 executed the lease agreement, accepted and used the equipment, defaulted on its payment obligations, and remained liable for any resulting deficiency following disposition of the copier. The lease expressly authorized acceleration of remaining payments upon default and permitted XFS to recover interest, costs, and attorneys' fees. ECF No. 89-2 at 1–2. JP1 does not dispute that it entered the lease, possessed the copier, or ceased making payments. Instead, JP1 relies principally on Article 9 defenses concerning notice and disposition of collateral. Because the agreement is governed by Article 2A rather than Article 9, JP1's notice and commercial reasonableness defenses fail as a matter of law. The parties dispute, however, the precise calculation of the deficiency balance owed under paragraph 15 of the lease, including the effect of the resale proceeds and any contractual reduction to the accelerated balance. *See* ECF No. 90 at 7; ECF No. 93 at 9-10. Accordingly, although Plaintiff is entitled to summary judgment as to liability on Count One, the amount of damages remains a disputed issue for further proceedings.

### B. Defendants' Motion to Dismiss Second Amended Complaint or Alternatively Motion for Summary Judgment

The Court next considers Defendants' motion to dismiss Count Three of the Second Amended Complaint under Rule 12(b)(6).[5]

Defendants first argue that Plaintiff cannot state a claim for fraudulent conveyance because Xerox is not a "creditor" of JP1 within the meaning of the MUFCA. They contend that, under Article 9 of the Maryland UCC, Xerox repossessed the copier but failed to provide JP1 with notice of the sale or prove that the collateral was disposed of in a commercially reasonable manner, both

---

[5] Notwithstanding the title of this motion, it is evident from the pleadings that the motion seeks dismissal or summary judgment specifically as to Count Three (fraudulent conveyance).

of which are statutory prerequisites that cannot be waived. *See* Md. Code Comm. Law §§ 9-611, 9-624(a), 1-302(b). Defendants further argue that because Xerox provided no notice and produced no evidence of a commercially reasonable sale, a statutory presumption applies that the collateral is deemed to have satisfied the full amount of JP1's indebtedness. *Id.* § 9-626(4). As a result, Defendants argue, JP1 owes no deficiency and Xerox is not a creditor of JP1 as a matter of law, which is a foundational element of the fraudulent conveyance claim. They ask the Court to take judicial notice of JP1's summary judgment filings raising the same UCC defects. ECF No. 94-1 at 7-9.

Second, Defendants assert that the fraudulent conveyance claim is time-barred. Select Printing was formed in March 2022, and the bill of sale for the equipment transfer is dated April 11, 2022. The Second Amended Complaint, filed following a July 2025 motion to amend, asserts this theory more than three years later, exceeding Maryland's three-year statute of limitations for civil actions. *See* Md. Code Cts. & Jud. Proc. § 5-101. Defendants argue the amendment does not relate back under Rule 15(c), because the original and amended complaints alleged only breach of contract and quantum meruit / unjust enrichment, not fraud, and therefore did not provide either JP1 or Select Printing with notice of a forthcoming fraudulent conveyance theory. ECF No. 94-1 at 9-12.

XFS responds by asserting that Article 2A governs the lease, that XFS remains a creditor, that the Second Amended Complaint relates back under Rule 15(c) because the fraudulent conveyance claim arises from the same common core of operative facts alleged in the First Amended Complaint and therefore provided Select Printing with notice of the factual basis for the claim, and that the discovery rule tolls limitations because the transfers were first uncovered in 2025 depositions. ECF No. 96 at 3-7.

### 1.  Treatment as Motion for Summary Judgment

In advancing their arguments, Defendants rely extensively on materials outside the pleadings, including the parties' previously filed summary judgment submissions. Indeed, Defendants expressly invoke their summary judgment filings, asserting that "the Motion for Summary Judgment (Doc. 86) and the Opposition to the Plaintiff's Motion for Summary Judgment (Doc. 89) filed by Defendant JP1 show[] that JP1 does not owe Plaintiff Xerox any money and is not a debtor of Plaintiff Xerox," and arguing that the repossession and disposition of the copier are governed by Article 9 of the Maryland UCC. ECF No. 94-1 at 8.

Additionally, because the parties have already filed cross-motions for summary judgment on the other counts and have fully engaged in discovery, both sides have had a reasonable opportunity to present all material facts pertinent to the issues raised. Defendants expressly acknowledge and consent to treatment of the motion as one for summary judgment, *see* ECF No. 94 at 3, and indeed styled their filing as a motion to dismiss, or in the alternative, for summary judgment. Under these circumstances, no further notice is required before treating the motion to dismiss as one for summary judgment, and the Court will do so. *See* Fed. R. Civ. P. 12(d).

### 2.  Statute of Limitations

Under Rule 15(c)(1)(B), an amendment relates back when it asserts a claim arising out of the conduct, transaction, or occurrence set out in the original pleading. *Farb v. Fed. Kemper Life Assur. Co.*, 213 F.R.D. 264, 267 (D. Md. 2003). The Fourth Circuit has set forth a two-prong test for determining whether an amendment relates back: (1) "[f]irst, to relate back there must be a factual nexus between the amendment and the original complaint"; (2) "[s]econd, if there is some factual nexus an amended claim is liberally construed to relate back to the original complaint if the defendant had notice of the claim and will not be prejudiced by the amendment." *Grattan v.*

*Burnett*, 710 F.2d 160, 163 (4th Cir.1983). Here, although the earlier complaints did not expressly assert a fraudulent conveyance claim, they alleged that Friedlieb continued operating substantially the same printing business through Select Printing while continuing to use the leased equipment after JP1's default. The Second Amended Complaint's fraudulent conveyance claim arises from the same alleged transfer of business operations, equipment, and assets already placed at issue in the prior pleadings. Accordingly, Count Three satisfies the *Grattan* two-pronged test because it arises from the same core conduct and transactions alleged throughout the litigation, and therefore relates back under Rule 15(c). In addition, XFS avers that the alleged transfers were first uncovered during discovery conducted in 2025. At minimum, a factual dispute remains concerning when XFS discovered, or reasonably should have discovered, the alleged transfers. Accordingly, Defendants are not entitled to summary judgment on limitations grounds.

### 3.  Article 9

Defendants' reliance on Article 9 to defeat the fraudulent conveyance claim is misplaced. MUFCA requires only that a creditor–debtor relationship exist and that the debtor transferred assets with intent to hinder, delay, or defraud. *See Nat'l Mortgage Warehouse, LLC v. Trikeriotis*, 201 F. Supp. 2d 499, 502 (D. Md. 2002). MUFCA does not incorporate Article 9, nor does a creditor's ability to pursue a fraudulent conveyance depend on compliance with Article 9's notice and disposition provisions. Defendants invoke Article 9 only to argue that Xerox is not a "creditor" because, in their view, Article 9's deficiency rules extinguish the debt. But for the reasons discussed *supra*, the parties' agreement is governed by Article 2A, not Article 9, and JP1 remained liable for the accelerated lease balance notwithstanding the repossession and resale of the equipment. Accordingly, Xerox qualifies as a creditor under MUFCA, and Defendants are not entitled to summary judgment on their Article 9 theory.

13

### C.  Plaintiff's Quantum Meruit / Unjust Enrichment Claim

In its response to Defendant's summary judgment motion, Plaintiff expressly concedes that its alternative claim for quantum meruit / unjust enrichment cannot proceed considering the undisputed existence of a written lease governing the parties' relationship. *See* ECF No. 89 at 1–2. Specifically, Plaintiff states that "Defendant concedes to its obligations under the Lease, [and] Plaintiff therefore agrees that Count Two alternatively seeking quantum meruit relief may be dismissed." *Id.* Plaintiff reiterates this concession in the supporting memorandum, explaining that "Plaintiff therefore agrees to the dismissal of Count Two of the Complaint seeking relief under quantum meruit is now appropriate." ECF No. 89-1 at 7–8. Accordingly, the Court will dismiss Count Two.

### IV.    Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be granted as to liability only on Count One. Defendant JP1's Motion for Summary Judgment will be denied. Count Two will be dismissed with the agreement of Plaintiff. Defendants' Joint Motion to Dismiss the Second Amended Complaint, or Alternatively Motion for Summary Judgment, will be treated as a motion for summary judgment and denied. This matter shall proceed to trial on Count One as to damages only, and on Count Three.

A separate order follows.

Date: August 4, 2026

_____/s/_____
Douglas R. Miller
United States Magistrate Judge